IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LEONARD ROBERTS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO: |
| | ) 4:20-cv-00236-RSB-CLR |
| v. | ) |
| | ) |
| PHILADELPHIA EXPRESS TRUST, | ) |
| HAPAG-LLOYD USA, LLC and | ) |
| MARINE TRANSPORT | ) |
| MANAGEMENT, and JOHN DOE | ) |
| DEFENDANTS, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANTS' MOTION TO DISMISS

COME NOW PHILADELPHIA EXPRESS TRUST, HAPAG-LLOYD USA, LLC, AND MARINE TRANSPORT MANAGEMENT (collectively "Defendants"), and by and through their undersigned counsel of record, file this Motion to Dismiss in the above-referenced matter. Defendants show this Honorable Court that Plaintiff's Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6) as follows:

### I. INTRODUCTION

In this action for state-law fraud, longshoreman Leonard Roberts alleges that Defendants were aware that a crew member on Defendants' vessel, the *Philadelphia Express*, was infected with the novel coronavirus (COVID-19) but did not tell him as he performed cargo operations. Roberts claims he contracted COVID-19 as a result, although he pleads no lasting injuries or permanent disruptions to his life. He seeks not only compensatory damages, but punitive damages and attorneys' fees.

Page **1** of **19**

Roberts's state-law claim for fraud—the only claim he raises—fails for multiple reasons. First, federal law completely preempts it. Roberts could only bring his claims under the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 *et seq.*, which expressly preempts state-law causes of action for longshoremen's injuries during cargo operations on navigable waters. Second, even if his fraud claim were not federally preempted, he fails to adequately plead it. Roberts does not procedurally comply with the Fed. R. Civ. P. 9(b) pleading-particularity standard, and he substantively fails to plead facts generating a cause of action for state-law fraud. The Complaint further fails to plead facts plausibly showing causation, because COVID-19's ubiquity make it impossible for Plaintiff to ever demonstrate he acquired his infection on the subject vessel. And if *those* problems did not exist, the Georgia legislature has specifically insulated business owners against liability for COVID-19 exposure. Because Plaintiff's underlying claims all fail, his Georgia-law claim for punitive damages fails as well.

Roberts has filed a bare-bone Complaint when the Federal Rules of Civil Procedure demand more, and multiple defenses completely preclude the recovery he seeks here. Accordingly, the Court should ***DISMISS*** his Complaint.

## II. BACKGROUND[1]

Mr. Roberts is a longshoreman who works cargo vessels at the Port of Savannah. Complaint at 3 (part of Doc. No. 1-1). On July 11-12, 2020, he worked as a longshoreman aboard the vessel *Philadelphia Express* at Container Berth CB-3 of the Garden City Terminal of the Georgia Ports Authority. *Id.* Defendants own, manage and operate the *Philadelphia Express.* Roberts claims that Defendants knew that a person on the *Philadelphia Express* had COVID-19

---

[1] Defendants treat Plaintiff's well-pleaded factual allegations as true, as the Court must do when evaluating a Motion to Dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 666 (2009). However, Defendants deny all factual allegations made against them.

and asserts (without citation) that the vessel was required to fly a quarantine flag. *Id.* at 4. He does not plead any facts about which Defendants knew which person onboard the vessel had COVID-19, when they discovered this fact, how they discovered this fact, or whether they reported that fact to any relevant authorities, including the Centers for Disease Control regional office in Atlanta, Georgia. *See, generally,* Complaint (Doc. No. 1-1). He also conflates all acts of all Defendants and does not separate any acts or roles of any Defendant, despite having sued the owner, manager, and operator of the *Philadelphia Express*.

Roberts claims that he was exposed to and contracted COVID-19 on the vessel. *Id.* He also claims that he suffered lost wages while clearing whatever COVID-19 protocol his employer and union imposed on him. *Id.* at 4. Finally, he alleges that Defendants participated in some sort of cover-up when the purportedly COVID-19-positive seaman traveled somewhere besides the Port of Savannah. He requests punitive damages. *Id.* at 5-6. He pleads no other cause of action, though he requests attorneys' fees appurtenant to his single fraud claim.

Defendants timely removed Plaintiff's Complaint to this Court on September 30, 2020 and now file this Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and 81, showing that Plaintiff's Complaint fails to state a claim and must be dismissed.

### III.    ARGUMENT AND CITATION OF AUTHORITY

#### A. Standard of Review

A complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive dismissal, the complaint's allegations must plausibly suggest that the plaintiff has a right

to relief, raising that possibility above a speculative level; if they do not, the plaintiff's complaint should be dismissed." *Redland Co. v. Bank of Am. Corp.*, 568 F.3d 1232, 1234 (11th Cir. 2009) (affirming district court's dismissal of claim) (citing case). Moreover, only well-pleaded *facts* may thwart dismissal under Rule 12(b)(6). The Eleventh Circuit Court of Appeals mandates that district courts "eliminate any allegations in the complaint that are merely legal conclusions" before deciding a motion to dismiss. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010).

Allegations of fraud demand even more scrutiny. Under Fed. R. Civ. P. 9(b), claims of fraud must be pleaded with particularity. As construed by the Eleventh Circuit, that is a strict standard. The Eleventh Circuit has noted that the "particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior," and that Rule 9(b) is only "satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting case), *superseded by statute on other grounds as noted in Arthurs v. Global TPA LLC*, 208 F. Supp. 3d. 1260, 1266-67 (M.D. Fla. 2015).

### B. The LHWCA preempts any state-law claim.

Start with Plaintiff's fundamental pleading problem: his Georgia cause of action is preempted by the LHWCA ("Act"). The Longshore and Harbor Workers' Compensation Act

completely and expressly preempts any state-law claim that Roberts brings here, including his sole pleaded cause of action for fraud. Generally, in "pre-emption cases, the question is whether state law is pre-empted by a federal statute, or in some instances, a federal agency action." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 111 (2014). "The Supreme Court has identified three circumstantial categories, where federal law preempts state law. First is express preemption, where Congress defines explicitly the extent to which its enactments pre-empt state law." *Wiersum v. U.S. Bank, N.A.*, 785 F.3d 483, 486 (11th Cir. 2015) (citation omitted). In other words, the most obvious way in which federal law preempts state law is when Congress says it does.

That is the case here. Congress explicitly provided that the LHWCA would preempt any state-law claim for a longshoreman purportedly injured in the course of his duties. The LHWCA provides that "[t]he remedy provided in this subsection <u>shall be exclusive</u> of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C.A. § 905 (emphasis added). This language explicitly preempts any Georgia causes of action or remedies for Mr. Roberts's purported injury.

Courts in this circuit have confirmed that Section 905(b) expressly preempts any state-law causes of action. The Southern District of Florida has noted that "federal maritime law and the LHWCA preempt the claims brought pursuant to the Florida Wrongful Death Act" in 2009. *In re Ms Madeleine Schiffahrtsgesellschaft mbH & Co.*, No. 08-61757-CIV, 2009 WL 3296668, at *2–3 (S.D. Fla. June 8, 2009). In analyzing Section 905(b)'s express-preemption provision, that court held that the "statute squarely applies to the claims here" regarding wrongful death and injury. Other prominent maritime courts agree: the Southern District of New York held that "if an injured employee's tort claims against a vessel owner fall under the federal courts' admiralty jurisdiction,

section 905(b) preempts state claims against the vessel owner . . .". *In re Donjon Marine Co., Inc.*, No. 07 CIV. 3840, 2008 WL 3153721, at *4 (S.D.N.Y. Aug. 5, 2008).

Here, all of Plaintiff's claims against Defendants fall under the federal courts' admiralty jurisdiction and the LHWCA, because they relate to an alleged danger Plaintiff encountered during core lashing and offloading operations onboard the Vessel, which was on a navigable body of water. Plaintiff's Complaint alleges that he contracted COVID-19 during his longshoring operations, while on the vessel itself. Complaint at 3 (Doc. No. 1-1). These on-vessel duties are the central acts that constitute the core of the LHWCA's coverage scheme, and the LHWCA governs exposure to toxic or infectious agents during onboard activities. *See, e.g., Minnick v. United States*, 767 F. Supp. 115, 116 (E.D. Va. 1990) (longshoreman's claim that he was overcome by toxic fumes in cofferdam held preempted by Section 905(b)). Because Plaintiff cannot possibly argue that exposure to a hazardous/infectious agent on a vessel during longshoring operations is outside the core duties that Section 905(b) governs, he cannot avoid preemption under that statute. It provides his lone remedy, but he has pleaded no cause of action under that section. Accordingly, his Complaint must be dismissed.

### C. **Plaintiff fails to adequately plead fraud, both procedurally and substantively.**

Plaintiff's only pleaded cause of action against Defendants is for "Fraud and Deceit." *See* Complaint at 5 (Doc. No. 1-1). But he does not plead that cause of action with the particularity required to survive under federal law. The Eleventh Circuit requires a fraud complaint to identify "(1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a

consequence of the fraud." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting case), *superseded by statute on other grounds as noted in Arthurs v. Global TPA LLC*, 208 F. Supp. 3d. 1260, 1266-67 (M.D. Fla. 2015).

Plaintiff pleads no facts that satisfy these requirements. Plaintiff does not plead specifically what statements or omissions that Defendants made to him, nor does he plead when any omitted statements should have been made or in what format. He does not plead which person or professional title was responsible for making any statements he claims were omitted. In fact, he does not separate the acts or statements of the Defendants at all, even though the Defendants occupied different roles. He does not plead facts showing what he would have done differently or how different acts from Defendants would have changed his behavior. Plaintiff also does not plead any facts demonstrating that the vessel knew that one of its crew members was infected with COVID-19, only making the conclusory allegation that the vessel was aware of that fact.

These bare-bones pleadings are not enough under Rule 9(b). District courts in this circuit have dismissed fraudulent-concealment claims premised on, for example, allegations that "Defendants undertook active and ongoing steps to conceal the defect" as "wholly insufficient" to meet the standard. *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017). To stand any chance of surviving, those plaintiffs would have had to provide "allegations specific to the participation of each Defendant, . . . allegations concerning who was involved in the fraudulent scheme, the time period or location of the scheme, or how each of the Defendants accomplished the fraudulent concealment." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 1197 (S.D. Fla. 2017). In short, Plaintiff's bare-bones complaint would likely fail under the default *Twombly* standard, but it certainly fails scrutiny under Rule 9(b)'s higher standard.

But Roberts does not just procedurally fail in his fraud pleading. He also substantively fails to plead facts demonstrating either a legally valid duty underpinning the purported fraudulent failure to disclose *or* proximate causation arising from that failure.

As to the lack of any duty underpinning the purported failure to disclose, Defendants can locate no legal duty for the vessel to "fly a quarantine flag," the only disclosure-related duty Roberts's Complaint identifies. Rather, applicable Centers for Disease Control requirements announce that a vessel whose sailor has certain symptoms must report it to the regional CDC office, not to longshoremen. *Federal Regulations for Reporting Death or Illness on Ships Destined for the United States*, CDC, <https://www.cdc.gov/quarantine/maritime/federal-regulations-reporting-illness-death-ships-destined-united-states.html> (last accessed Sept. 23, 2020) ("According to U.S. federal regulations, all deaths and ill persons displaying any of the following signs and symptoms **must** be reported to CDC"). Those requirements are enshrined in the Code of Federal Regulations, which likewise commands that this vessel needed to report any sailor with specific symptoms to the Atlanta division of the CDC, not to local longshoremen by flying a flag. *See* 42 C.F.R. §71.21 ("The master of a ship destined for a U.S. port shall **report immediately to the quarantine station** at or nearest the port at which the ship will arrive, the occurrence, on board, of any death or any ill person among passengers or crew (including those who have disembarked or have been removed) during the 15-day period preceding the date of expected arrival or during the period since departure from a U.S. port (whichever period of time is shorter).") (emphasis added).

That presents two problems for Roberts. First, he does not plead that Defendants failed to report any allegedly symptomatic mariner to the CDC in Atlanta. *See generally* Complaint (part of Doc. No. 1-1). He has pleaded no breach of the only even *potentially* legally cognizable duty

that Defendants can locate. Without pleading a disclosure-duty breach, he cannot support a fraud claim based on a failure to close.

Second, even if Roberts *had* pleaded that the vessel failed to report the purportedly ill mariner to the CDC in Atlanta, he does not plead that the CDC would have an affirmative duty to inform the ILA Local 1414 in time for Roberts to avoid whatever exposure he claims. That failure dooms his cause of action, because simply pleading a failure to report a fact to a government agency does not state a claim for harm to a third party if there is no plausible allegation that the agency would have timely informed that third party. For example, in the pharmaceutical context, a plaintiff "ultimately must allege that if Defendant had properly filed MDRs in accordance with FDA regulations, this information would have reached Plaintiff or her physician in time to prevent her injury." *Cline v. Advanced Neuromodulation Sys., Inc.*, 17 F. Supp. 3d 1275, 1286 (N.D. Ga. 2014). In *Cline*, this proximate causation breakage existed for a simple reason:

> the FDA's disclosure of MDRs to the public is not guaranteed. *See* 21 C.F.R. § 803.9 ("[the FDA] *may* disclose to the public any report ... submitted under this part") (emphasis added). Thus, there is no guarantee that the FDA would have disclosed MDRs that were timely filed by Defendant.

*Cline*, 17 F. Supp. 3d at 1286 (footnote omitted). *See also Jacob v. Curt*, 898 F.2d 838, 839 (1st Cir. 1990) (in absence of plausible allegation that author of critical letter controlled subsequent government decision that shut down the health clinic that the letter attacked, no causation was pleaded because government was independent actor).

The same principle governs here. The relevant federal regulations grant the CDC broad discretion in how it treats reports of a seafarer who displays symptoms of infection. First, the CDC need not inspect the vessel at all unless "the Director determines that a failure to inspect will present a threat of introduction of communicable diseases into the United States, as **may** exist when the carrier has on board individual(s) reportable in accordance with § 71.21 or meets the

circumstances described in § 71.42." 42 C.F.R. § 71.31 (emphasis added). Further, the "Director **may** require detention of a carrier until the completion of the measures outlined in this part that are necessary to prevent the introduction or spread of a communicable disease." *Id.* (emphasis added). Defendants can locate no provision *requiring* the Director to inform local longshoremen of a report under Section 71.42, nor requiring him to inform any specific subset of longshoremen within a time guaranteed to prevent them from performing cargo operations. And without those provisions, Roberts cannot plead facts showing proximate causation between any alleged failure of Defendants to report illness to the CDC and his non-exposure event aboard the vessel.

In sum, Roberts identifies no provision requiring the vessel to fly a specific flag. He ignores the vessel's *actual* duty if it did know that a sailor had COVID-19—which was, at most, to contact the CDC regional office in Atlanta. He does not plead that the vessel failed to do that. And even if the vessel *had* failed to do that, there is no proximate causation as a matter of law between that alleged failure and Roberts's purported exposure to COVID-19.

Moreover, Roberts has not pleaded an actionable case of fraud-by-omission because he does not plead facts showing the existence of a confidential or fiduciary relationship between him and Defendants. Generally, for an omission to constitute actionable fraud, the party failing to offer up the relevant information must be in a confidential relationship with the defrauded party. *Kienel v. Lanier*, 190 Ga. App. 201, 203, 378 S.E.2d 359, 360 (1989). And business counterparties almost never meet the test:

> [I]n the majority of business dealings, opposite parties have trust and confidence in each other's integrity, but there is no confidential relationship by this alone. ... For this reason, most business relationships are not generally confidential or fiduciary relationships. ... Where parties are engaged in a transaction to further their own separate business objectives, there is no duty to represent or advance the other's interests.

*Newitt v. First Union Nat. Bank*, 270 Ga. App. 538, 545–46, 607 S.E.2d 188, 196 (2004). Here, whether Roberts had "trust and confidence in [the vessel's] integrity," there was no confidential relationship, and all parties were fundamentally advancing their own interests—the stevedores advancing their company's interest in completing the transaction, and the vessel its interest in ensuring cargo was offloaded. Pretermitting whether failure to disclose a purported infection in such circumstances would give rise to another cause of action, it states no case for fraud.[2]

Roberts's Complaint fails to plead fraud both procedurally and substantively. It does not plead any of the basic elements of fraudulent statements or omissions that Defendants purportedly made, how and when they made them, how and when they had the relevant information, or any of the other specific facts that Eleventh Circuit 9(b) law requires. Substantively, Roberts pleads neither facts showing an obligation to disclose or proximate causation. His pleading fails under any federal pleading standard, and certainly under the rigorous Rule 9(b) standard that governs his entire Complaint.

### D. **Plaintiff pleads no facts showing that the Philadelphia Express was the plausible source of his COVID-19 infection.**

Plaintiff's Complaint suffers from another fatal defect that no amount of creative pleading will overcome: he will never be able to plead specific, affirmative facts creating a plausible inference that he contracted COVID-19 while working the Vessel, as opposed to any other facet of his life. Because pleading facts that state a plausible cause of action as to causation is key to clearing the Rule 12(b) threshold, Plaintiff's claim must be dismissed.

---

[2] It appears that Plaintiff refers only to Georgia fraud in his pleading, not to any separate maritime-law action bearing that title. Indeed, most fraud cases in the maritime context are brought in the insurance context, as other statutory schemes and common-law duties overlap conventional state-law fraud and provide concomitant protections. *See* Thomas J. Schoenbaum, *Maritime fraud*, 2 ADMIRALTY & MAR. LAW § 19:25 (6th ed.) (describing species of maritime fraud primarily related to theft, charter fraud, scuttling fraud, and documentary fraud).

COVID-19's ubiquity makes the source of Roberts's infection impossible to trace, and he cannot plead any facts showing otherwise. COVID-19 is everywhere in American society, both now and in mid-July 2020. As courts have held, there is nothing unique about maritime vessels that renders exposure more likely or creates a presumption that a potential maritime exposure to the virus is where an infection was actually contracted—even when that exposure is on a cruise ship, which is a far more claustrophobic environment generating far more prolonged exposure to the infected. "The risk of exposing individuals to COVID-19 is not unique to cruise ships—quite the contrary, in fact, as restaurants, bars, churches, factories, nursing homes, prisons, and other establishments across the country continue to report COVID-19 cases." *Weissberger*, 2020 WL 3977938, at *4.

The District of New Jersey went even further: it demonstrated that few locales are safe from COVID-19, and moving from one place to another does not necessarily mitigate exposure or risk from the virus. As it noted in failing to release an incarcerated litigant from prison, "Defendant fails to demonstrate how his release on home confinement will significantly reduce his likelihood of contracting COVID-19. Indeed, as mentioned, FCI Loretto currently has no confirmed cases of COVID-19 among either inmates or staff, while the City of Richmond and its surrounding counties have 728 confirmed cases and counting." *United States v. Feiling*, No. 3:19CR112 (DJN), 2020 WL 1821457, at *8 (E.D. Va. Apr. 10, 2020). Unsurprisingly, then, "COVID-19 presents an equal, if not greater, threat to Defendant even if he were released on home confinement." *Id.* Put simply, the virus is everywhere, and few locales except a COVID-19 ward present a better chance of exposure than any alternate venue.

Because it is impossible for Roberts to plead facts plausibly showing that he contracted COVID-19 on the *Philadelphia Express*, and not elsewhere, he cannot recover. The need for

causation, both factual and proximate, is a tort-law bedrock. When a litigant cannot plead "a legally attributable causal connection between the defendant's conduct and the alleged injury," his complaint must be dismissed. *Barnes v. AstraZeneca Pharm. LP*, 253 F. Supp. 3d 1168, 1173 (N.D. Ga. 2017) (citing Georgia law). "A mere possibility of such causation is not enough[,] and when the matter remains one of pure speculation or conjecture, causation is not present." *Id.* (alterations in original).

The requirement that a plaintiff plead adequate causation facts is only greater in the context of widespread, aerosolized diseases that the general population contracts almost at random. Statutory and common-law frameworks recognize that it *must* be harder to recover for contracting a ubiquitous disease: no legal system relying on evidence instead of pure speculation could function if that were not the case. Georgia workers' compensation law, for instance, only allows recovery for "occupational diseases" when the disease "is not of a character to which the employee may have had substantial exposure outside of the employment" and "is not an ordinary disease of life to which the general public is exposed." O.C.G.A. § 34-9-280(2)(C) and (D). That distinction is not ephemeral; it decides cases in Georgia courts. *Fulton-DeKalb Hosp. Auth. v. Bishop*, 185 Ga. App. 771, 771, 365 S.E.2d 549, 550 (1988) ("Thus, the only evidence of record in regard to these criteria unrebuttedly established in this case that hepatitis B is of a character to which appellee may have had unknowing and substantial exposure outside of his employment and is an ordinary disease of life to which the general public is exposed.").

But those principles do not just apply in the state-law workers' compensation context; they also apply to maritime cases at the pleading stage. The Southern District of Florida, for instance, dismissed a cruise-line passenger's amended complaint alleging she contracted meningitis on similar grounds. *Rinker v. Carnival Corp.*, 753 F. Supp. 2d 1237, 1242 (S.D. Fla. 2010). That

litigant had pleaded that "Carnival allowed passengers with visible signs of illness to board its vessel and then walk and access the ships' common areas, including but not limited to restaurants, bars, elevators, and pools," as well as "work in the vessel's kitchens, bars and restaurants," "manipulate food and beverages handed out for passenger consumption;" and 'cough, sneeze and/or spit in close proximity to passengers." *Rinker,* Amended Complaint and Demand for Jury Trial, No. 09-23154, 2010 WL 3900714, ¶ 15 (S.D. Fla. July 2, 2010). Despite those allegations, the Court held that Plaintiff had not pleaded how any of the above-pleaded failures "led to Plaintiff's injuries," because she did not "allege any facts that demonstrate that any of the crewmembers or passengers had meningitis, bacteremia, or osteomyelitis." *Rinker*, 753 F. Supp. 2d at 1242 (emphasis added). The *Rinker* Plaintiff's innuendo and circumstantial pleadings did not substitute for pleading facts showing that the specific failures alleged in the relevant subpart of the complaint caused her infection.

Here, the same inability to plead facts showing that Roberts acquired COVID-19 on the *Philadelphia Express* dooms his Complaint. Although Roberts cursorily pleads that he has complied with CDC recommendations regarding COVID-19 elsewhere in his life, his pleading is even more general and infirm than the one dismissed in *Rinker*. He does not plead that he contracted COVID-19 on the vessel, nor could he—only that "[i]t is his belief" that he did so. Complaint at 4 (Doc. No. 1-1). But COVID-19 is not HIV or Hepatitis-C, diseases that can be traced back to a limited number of intimate exposures. It is everywhere. It has infected 30 million people worldwide (that we know of).[3] When a disease is so ubiquitous that the District of New Jersey accurately notes a prisoner may well be safer in prison than in broader civil society, Plaintiff

---

[3] *Coronavirus Cases*, Worldometer.com, *available at* <https://www.worldometers.info/coronavirus/?utm_campaign=homeAdvegas1?%20> (last accessed Sept. 28, 2020).

simply cannot plead any facts that will ever create a plausible inference he contracted COVID-19 on the *Philadelphia Express*, so he has failed to adequately plead causation. He fails to state a claim for this additional reason.

### E. *Georgia law insulates businesses from liability related to COVID-19 transmission.*

Even if Plaintiff could overcome the total preemption of his cause of action, his failure to plead a cognizable fraud claim under Rule 9(b), and his inability to ever plead a causal link between conditions on the vessel and his eventual infection with COVID-19, Georgia's Covid-19 Pandemic Business Safety protocols would *still* preclude his claims.

Those protocols, encapsulated in O.C.G.A. 51-16-1 *et seq.*, prescribe a specific warning that entities may post on their premises:

> Warning
>
> Under Georgia law, there is no liability for an injury or death of an individual entering these premises if such injury or death results from the inherent risks of contracting COVID-19. You are assuming this risk by entering these premises.

O.C.G.A. § 51-16-3. When a business posts that warning, it generates a rebuttable presumption that any entrant assumed the risk of his actions regarding COVID-19, unless the premises owner displays "gross negligence, willful and wanton misconduct, reckless infliction of harm, or intentional infliction of harm." *Id.*

Here, the Georgia Ports Authority prominently displays the required warning at the entrance to its premises and throughout the Garden City container terminal, a copy of which is attached to this <u>Motion to Dismiss</u> as **Exhibit 1.**[4] Plaintiff would have had to pass that warning to

---

[4] Defendant does not believe that Plaintiff will dispute the existence of that warning, and it is a core document establishing existence of a condition or lack thereof in the case. The Court can consider it on a Motion to Dismiss. *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1276 (11th Cir. 1999) (holding that court could take judicial notice of documents filed with SEC for contents thereof).

enter the Port and perform his longshore duties. If he were actually exposed to COVID-19, that warning would insulate any business on the premises from liability. O.C.G.A. § 51-16-3. Further, as shown earlier, Plaintiff has not pleaded any facts with particularity demonstrating that Defendants acted recklessly or intentionally. *See supra* Section III.C. He cannot avail himself of any of the exceptions to Section 51-16-3.

### F. Plaintiff's punitive-damages claim fails because his substantive claims fail.

Finally, Plaintiff pleads entitlement to exemplary (punitive) damages under O.C.G.A. § 51-12-5.1. Complaint at 5 (Doc. No. 1-1). His underlying claims, however, all fail, as shown above. He cannot claim entitlement to punitive damages without underlying claims to rest on, and this claim must also be dismissed. *Roofing Supply of Atlanta, Inc. v. Forrest Homes, Inc.*, 279 Ga. App. 504, 508, 632 S.E.2d 161, 165 (2006) ("Because Forrest's claims for punitive damages and attorney fees would have been awardable only if Forrest had prevailed on its tort claims, they were properly dismissed as well.").

## IV. CONCLUSION

Plaintiff has failed to plead facts that, taken as true, would entitle him to the relief he seeks. First, he pleads a cause of action and damages that the LHWCA completely preempts. The Supremacy Clause prevents him from pursuing these claims at all. Next, he fails to plead fraud both procedurally and substantively: he does not plead any underlying facts with particularity, and he can show neither a duty nor a relationship catalyzing any potential cause of action for fraudulent failure to disclose. He also fundamentally can *never* plead facts generating a plausible inference that this particular longshoring job was where he contracted COVID-19, given that the virus is highly contagious and has spread through Georgia like wildfire. And even if he could overcome these problems, Georgia law specifically proscribes his cause of action, because the Georgia

General Assembly recognized that a cascade of COVID-19 lawsuits would break Georgia's economy and kill jobs. Because Plaintiff's underlying claims fail, his punitive-damages claim fails too.

For the foregoing reasons, the Court should ***DISMISS*** Plaintiff's Complaint.

Respectfully submitted, this 30th day of September, 2020.

                      BOUHAN FALLIGANT, LLP

                      /s/ Todd M. Baiad
                      TODD M. BAIAD
                      Georgia Bar No: 031605
                      LUCAS D. BRADLEY
                      Georgia Bar No: 672136
                      *Attorneys for Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC and Marine Transport Management*

One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com
ldbradley@bouhan.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| LEONARD ROBERTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO: |
| | ) | 4:20-cv-00236-RSB-CLR |
| v. | ) | |
| | ) | |
| PHILADELPHIA EXPRESS TRUST, | ) | |
| HAPAG-LLOYD USA, LLC and | ) | |
| MARINE TRANSPORT | ) | |
| MANAGEMENT, and JOHN DOE | ) | |
| DEFENDANTS, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that the following parties to this action have been served this day with a copy of the foregoing by regular U.S. mail, postage prepaid addressed as follows:

Brent J. Savage, Esq.
Samuel L. Mikell, Esq.
SAVAGE TURNER DURHAM PINCKNEY & SAVAGE
Post Office Box 10600
Savannah, Georgia 31412

This 30th day of September, 2020.

*[signature page to follow]*

BOUHAN FALLIGANT, LLP

/s/ Todd M. Baiad
TODD M. BAIAD
Georgia Bar No: 031605
LUCAS D. BRADLEY
Georgia Bar No: 672136
*Attorneys for Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC and Marine Transport Management*

One West Park Avenue (31401)
P.O. Box 2139
Savannah, GA 31402-2139
Telephone: (912) 232-7000
Facsimile: (912) 233-0811
tmbaiad@bouhan.com
ldbradley@bouhan.com

4845-2743-4188, v. 1