IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LEONARD ROBERTS,<br><br>    Plaintiff,<br><br>v.<br><br>PHILADELPHIA EXPRESS TRUST;<br>HAPAG-LLOYD USA, LLC; MARINE<br>TRANSPORT MANAGEMENT; and JOHN<br>DOE DEFENDANTS,<br><br>    Defendants. | CIVIL ACTION NO.: 4:20-cv-236 |

**O R D E R**

    This matter is before the Court on Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC, and Marine Transport Management's Motion to Dismiss, (doc. 9). Leonard Roberts initially filed this action in the State Court of Chatham County after, as he alleges, he worked as a longshoreman on a vessel with an individual who tested positive for COVID-19. (Doc. 1-1, pp. 6, 8–9.) Roberts alleges that he contracted COVID-19 from that exposure on the vessel. (Id. at p. 9.) Roberts further alleges that Defendants knew about the seaman's positive test result but did not inform Roberts of it. (Id.) All Defendants (besides the fictious "John Doe Defendants")[1]

---

[1] Plaintiff alleges that certain "John Doe Defendants" helped transport the COVID-19 "positive seaman . . . away from the Port of Savannah" to "hide the impropriety of what [Defendants[ had done." (Doc. 1-1, p. 10.) "As a general matter, fictitious-party pleading is not permitted in federal court." Richardson v. Johnson, 598 F.3d 734, 738 (11th Cir. 2010). There is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'" Id. (quoting Dean v. Barber, 951 F.2d 1210, 1215 n.6 (11th Cir. 1992)). Here, the Complaint states that John Doe Defendants are "persons and/or entity/entities" and provides no other information about them besides that they "are believed to be Georgia residents." (Doc. 1-1, p. 10.) The real defendant or defendants "cannot be readily identified for service" from this description, so the presence of the fictitiously named John Doe Defendants are "insufficient to sustain a cause of action." Williams v. DeKalb Cnty. Jail, 638 F. App'x 976, 977 (11th Cir. 2016) (per curiam). Because they are not proper parties to this action, the Court disregards the John

removed the case to this Court, (doc. 1), and filed a Motion to Dismiss, (doc. 9). For the reasons explained more fully below, the Court **DENIES** Defendants' Motion to Dismiss **WITHOUT PREJUDICE**. (Id.)

## BACKGROUND

Plaintiff is a resident of Savannah, Georgia, and works as a longshoreman at the Georgia Ports Authority. (Doc. 1-1, p. 6.) On July 11 and 12, 2020, "Plaintiff was working as a longshoreman aboard the vessel *Philadelphia Express*." (Id. at p. 8.) According to the Complaint, Defendants, collectively, "own, manage, operate, direct, and crew . . . the *Philadelphia Express*." (Id. at pp. 7–8.) Specifically, the Complaint alleges that Philadelphia Express Trust "was the registered owner of" the *Philadelphia Express*, (id. at p. 8), and the vessel "was operated, captained and crewed by" Hapag-Lloyd USA, LLC, (id. at p. 9).

The Complaint alleges that, while Plaintiff was working aboard the *Philadelphia Express*, a seaman onboard the vessel "was known by Defendants to have COVID-19," but the vessel was not flying its "quarantine flag" as it was required to do. (Id. at p. 9.) Furthermore, "[t]he longshoremen [aboard the vessel] were never advised of this situation" until "[a]fter the vessel left the port, [at which time] it called back in to advise that it had a COVID-19 positive seaman [who had been] onboard while the longshoremen were working the vessel." (Id.) At some point, Plaintiff alleges that he "was prohibited from working and required to [get] a COVID-19 test." (Id.) According to the Complaint, Plaintiff "contracted COVID-19," and "[i]t is his belief [that]

---

Doe Defendants and will not address them again. See Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1318 n.4 (11th Cir. 2015).

2

he contracted [the disease] because of his exposure on the vessel."[2]  (Id.)  Finally, Plaintiff asserts that "[h]e was and is stigmatized in his work as a COVID-19 carrier."  (Id.)

Plaintiff filed his Complaint in the State Court of Chatham County on September 8, 2020, asserting a fraud and deceit claim against all three Defendants.  (Doc. 1-1, pp. 6, 10.)  He also alleges entitlement to attorney's fees under O.C.G.A. § 13-6-11 and punitive damages under O.C.G.A. § 51-12-5.1.  (Id. at pp. 10–11.)  Defendants removed the case to this Court on September 30, 2020.  (Doc. 1.)  Once in this Court, Defendants filed a Motion to Dismiss.  (Doc. 9.)  Plaintiff filed a Response to this Motion, (doc. 14), and Defendants filed a Reply, (doc. 18).

## LEGAL STANDARD

Under a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009) (citing Jackson v. BellSouth Telecomm., 372 F.3d 1250, 1262 (11th Cir. 2004)).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth."  Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009). On the contrary, legal conclusions "must be supported by factual allegations."  Id.  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).  Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  Iqbal, 556 U.S. at 679.

---

[2] The Complaint further asserts that "Mr. Roberts practiced all CDC suggested guidelines off the vessel." (Doc. 1, p. 9.)

**DISCUSSION**

Defendants argue that Plaintiff is unable to state a claim for fraud and deceit under Georgia law because, under the facts pled in the Complaint, such claim is preempted by federal law.[3] (Doc. 18, pp. 4–6.) In Response, Plaintiff maintains that he can still assert his fraud and deceit claim, but he also alternatively requests leave to amend his Complaint. (Doc. 14, pp. 7–11.)

"The Supremacy Clause provides that the laws and treaties of the United States 'shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" Mut. Pharm. Co. v. Bartlett, 570 U.S. 472, 479 (2013) (alterations in original) (quoting U.S. Const., art. VI, cl. 2). "Congress's intent to preempt state law may be stated expressly in a statute or implied by the statute's structure and purpose." Lawson-ross v. Great Lakes Higher Educ. Corp., 955 F.3d 908, 916 (11th Cir. 2020). Notably, "[f]ederal preemption is an affirmative defense upon which the defendants bear the burden of proof." Fifth Third Bank v. CSX Corp., 415 F.3d 741, 745 (7th Cir. 2005).

Defendants argue that Plaintiff's state law claim is preempted by the Longshore and Harbor Workers' Compensation Act ("LHWCA"). (Doc. 18, pp. 4–6.) Congress, in passing the LHWCA, provided longshoremen like Plaintiff with "a cause of action against a vessel for injuries caused to them by the vessel's negligence." Washington v. Nat'l Shipping Co. of Saudi Arabia, 374 F. Supp. 3d 1339, 1349 (S.D. Ga. 2019). The portion of the LHWCA that establishes this cause of action

---

[3] Defendants make additional arguments for why Plaintiff's Complaint should be dismissed, including that Plaintiff has failed to adequately plead fraud (both procedurally and substantively) and that Plaintiff has not shown that the *Philadelphia Express* was the plausible source of Plaintiff's COVID-19 infection. (Doc. 9, pp. 6–16.) Because the Court is giving Plaintiff an opportunity to amend his Complaint and giving Defendants an opportunity to then file another motion to dismiss on preemption and any other applicable grounds, the Court declines to address these arguments at this time.

also states that "[t]he remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter." 33 U.S.C. § 905(b). The Supreme Court of the United States has examined this provision and found that the LHWCA provides a longshoreman "with . . . negligence claims (against the vessel, § 905(b)) for injury and death" but "expressly pre-empts all other claims." Norfolk Shipbuilding & Drydock Corp. v. Garris, 532 U.S. 811, 818 (2001); see also Ghotra v. Bandila Shipping, Inc., 113 F.3d 1050, 1060 (9th Cir. 1997) ("[S]tate wrongful death remedies are preempted by [the LHWCA]."); Helaire v. Mobil Oil Co., 709 F.2d 1031, 1041 (5th Cir. 1983) ("[Section] 905(b) states that 905(b) remedies are 'exclusive of all other remedies available', except those otherwise provided in [the LHWCA]. This provision negates a claim under state law . . . .").

Plaintiff characterizes his claim against all Defendants as one for state-law fraud and deceit. (Doc. 1-1, pp. 10–11.) The Court, however, does not elevate form over substance in analyzing whether a claim is preempted by federal law and will instead look at the actual allegations that make up Plaintiff's claim. In essence, Plaintiff's claim is that Defendants knew but failed to warn or inform him that there was a risk that he would be exposed to the virus that causes COVID-19 while he was working aboard the *Philadelphia Express*, that he was indeed exposed to and contracted the virus while working aboard the vessel, and that he suffered lost wages and mental pain and suffering as a result. (Id. at pp. 9–11.)

Defendants, as the parties asserting the affirmative defense of preemption, bear the burden of adequately showing that what happened to Plaintiff qualifies as an "injury" covered by the LHWCA.[4] The LHWCA defines "injury" as

---

[4] In his Response, Plaintiff reasserts that "Defendants own, maintain, and operate the container Vessel at issue," (doc. 14, p. 4.), and never dispute that Philadelphia Express Trust, Hapag-Lloyd USA, LLC, and

5

>accidental injury or death arising out of and in the course of employment, and such occupational disease or infection as arises naturally out of such employment or as naturally or unavoidably results from such accidental injury, and includes an injury caused by the willful act of a third person directed against an employee because of his employment.

33 U.S.C. § 902(2).  In their Motion to Dismiss, Defendants do not specifically address the issue of whether Plaintiff's allegations implicate an injury as defined by the LHWCA.  The closest they come is to argue that, by "alleg[ing] that he contracted COVID-19 during his longshoring operations, while on the vessel itself," Plaintiff's Complaint implicated "on-vessel duties [that] are the central acts that constitute the core of the LHWCA's coverage scheme, and the LHWCA governs exposure to toxic or infectious agents during onboard activities." (Doc. 9, p. 6.)  Without saying much more, Defendants conclude by stating, "Because Plaintiff cannot possibly argue that exposure to a hazardous/infectious agent on a vessel during longshoring operations is outside the core duties that Section 905(b) governs, he cannot avoid preemptions under that statute." (Id.)  In support of their argument, Defendants cite one case, Minnick v. United States, 767 F. Supp. 115, 116 (E.D. Va. 1990).  (Id.)  In that case, the administratrix of the decedent's estate asserted a wrongful death claim against the owner of a ship after the decedent died from inhaling fumes while he was cleaning waste gasoline and contaminants out of an enclosed area on the ship.  Id.  The court held that, under the 1972 amendments to the LHWCA, the plaintiff, in suing the shipowner (who had not been the decedent's employer), was limited to bringing "a negligence cause of action

---

Marine Transport Management would all fall within the term "vessel" as it is used in the LHWCA.  Indeed, the definitions section of the LHWCA defines vessel to include "any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member," 33 U.S.C. § 902(21), which would include all three Defendants, as they allegedly together "own, manage, operate, direct, and crew . . . the *Philadelphia Express*," (doc. 1-1, pp. 7–8).

pursuant to § 5(b) of the LHWCA." Id. at 118. The court did not, however, provide any analysis or discussion about what does and does not qualify as an "injury" under the LHWCA, and it by no means touched on the unrelated issue of whether exposure to "infectious agents" (a term coined by Defendants)—specifically, a virus that is widespread throughout the world (and not peculiar to the longshore or maritime work environment)—qualifies as an "injury" covered by the LHWCA. See generally id.  Thus, the Minnick decision offers the Court no insight or guidance on the issue of whether Plaintiff's allegations here indicate that he suffered an "injury" covered by the LHWCA.

Plaintiff's briefing is also, unfortunately, of no assistance to the Court on this issue, as Plaintiff does not make any specific argument regarding whether his alleged injuries fall outside the scope of the LHWCA's definition. (Doc. 14, pp. 4–7.) Unlike Plaintiff, however, Defendants bore the burden of persuasion here, so Plaintiff cannot be seriously faulted for failing to address the topic. The Court is not aware of any case directly on all fours with—or even easily analogized to—the allegations in this case. Accordingly, the Court cannot determine whether Plaintiff's claim is preempted by the LHWCA, and, therefore, **DENIES** Defendants' Motion to Dismiss **WITHOUT PREJUDICE** to its being refiled in accordance with the instructions provided at the conclusion of this Order.

Within his Response Brief, Plaintiff argued that his "pleadings are adequate, but even if they [a]re not, the Court should grant [him] leave to amend them." (Doc. 14, pp. 7–11.) As explained above, while the Court denied Defendant's Motion to Dismiss, it did so without prejudice. The Court's denial does not constitute a ruling one way or the other on the threshold issue of whether Plaintiff's claim is preempted by the LHWCA (and, if it is not preempted, whether

7

it is subject to dismissal on the other grounds raised by Defendants in the Motion to Dismiss) and Defendants are not foreclosed from filing another Motion to Dismiss.

In the interest of fairness and judicial efficiency, however, it is appropriate to ascertain the law applicable to Plaintiff's claims prior to engaging in discovery. Thus, the Court **GRANTS** Plaintiff the opportunity to recast his Complaint, if he so chooses, prior to Defendants' filing (if they so choose) of another motion to dismiss. Accordingly, Plaintiff may file a recast complaint within **FOURTEEN (14) DAYS** of the date of this Order. Upon the filing of an amended complaint or upon expiration of the fourteen-day period for Plaintiff to recast his complaint, Defendants may file a second motion to dismiss as to the then-operative complaint within **THIRTY-FIVE (35) DAYS** of the date of this Order.[5] In the event Defendants file a motion to dismiss, the standard rules and deadlines governing responses and replies will apply.

## CONCLUSION

In light of the foregoing, the Court **DENIES WITHOUT PREJUDICE** Defendants Philadelphia Express Trust, Hapag-Lloyd USA, LLC, and Marine Transport Management's Motion to Dismiss. (Doc. 9.) The Court **GRANTS** Plaintiff Leonard Robert's request for leave to amend his Complaint. (Doc. 14, pp. 7–11). Plaintiff shall have **FOURTEEN (14) DAYS** from the date of this Order to file a recast complaint (should he choose to do so). Plaintiff shall file any amended complaint on the docket as a stand-alone entry. Finally, upon Plaintiff's filing of a recast

---

[5] To be clear, Defendants shall not file a motion to dismiss until Plaintiff has either filed a recast complaint or until the fourteen-day period for Plaintiff to do so has expired. Of course, should Plaintiff file a recast complaint, that complaint will become the operative pleading in the case and any motion to dismiss must be as to that complaint. Should Plaintiff choose not to recast his complaint, any motion to dismiss by Defendants would be as to the current complaint. When choosing whether and how to recast his complaint, Plaintiff must consider and investigate the law applicable to his claims including the preemption contentions raised by Defendants. Additionally, should Defendants reassert their preemption arguments, they must do so with more detail and without the deficiencies noted herein.

complaint or upon the expiration of Plaintiff's fourteen-day period to do so, Defendant may file a second motion to dismiss, but they must do so withing **THIRTY-FIVE DAYS (35) DAYS** of the dates of this Order.

**SO ORDERED**, this 1st day of September, 2021.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA