UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| LEONARD ROBERTS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CV420-236 |
| PHILADELPHIA EXPRESS TRUST, *et al.*, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER

Plaintiff Leonard Roberts has moved to exclude Defendants Philadelphia Express Trust, Hapag-Lloyd USA, Inc., and Marine Transport Management's ("Defendants") expert witness Mitchell A. Blass, M.D. Doc. 55. Defendants have responded, doc. 56, Plaintiff has replied, doc. 65, and Defendants have sur-replied, doc. 67. The motion is ripe for disposition.

## Background

This Court previously summarized Plaintiff's allegations as follows:

Plaintiff Leonard Roberts resides in Savannah, Georgia, and works as a longshoreman at the Georgia Ports Authority. ([Doc. 27] at p. 1.) On July 11 and 12, 2020, Plaintiff was working as a longshoreman aboard the vessel Philadelphia Express (the "Vessel") at the Garden City Terminal of the

> Georgia Ports Authority. (*Id.* at p. 4.) Defendants "own, manage, operate, direct, and crew" the Vessel. (*Id.* at p. 2.) Specifically, Defendant Philadelphia Express Trust was the "registered owner" of the Vessel, and Defendant Hapag-Lloyd USA, LLC "operated, captained and crewed" the Vessel, as well as managed the equipment onboard. (*Id.* at p. 4.) Before docking the Vessel in Georgia, Defendants knew that a person on board had COVID-19. (*Id.*) However, Defendants did not "fly its quarantine flag on the [V]essel before the longshoremen began boarding," despite knowing "that longshoremen, including . . . Plaintiff, reasonably relied" on their doing so "if there was a known and dangerous virus." (*Id.* at p. 5.) Additionally, Defendants knew that Plaintiff would interpret the absence of a quarantine flag to mean that no one on board the Vessel was positive for COVID-19. (*Id.*) After the Vessel left the port, "[it] called back in to advise [that] it had a COVID-19 positive seaman on board while the longshoremen were working on the [V]essel." (*Id.*) Plaintiff alleges that he then contracted COVID-19 due to his exposure on the Vessel. (*Id.* at p. 6.)

Doc. 37 at 2-3 (footnote omitted).

Plaintiff's Amended Complaint alleged a claim for fraudulent concealment under Georgia law and negligence under Section 905(b) of the Longshore and Harbor Workers' Compensation Act ("LHWCA"). Doc. 27 at 3, 7-12. Defendants moved to dismiss, doc. 28, and the Court partially granted Defendants' Motion, dismissing Plaintiff's state law fraudulent concealment claim and a portion of Plaintiff's Section 905(b) claim, doc. 37 at 26. However, the Court denied Defendant's motion to dismiss Plaintiff's Section 905(b) claim based on an alleged violation of

2

Defendants' turnover duty, *see Scindia Steam Navigation Co. v. De Los Santos*, 451 U.S. 156, 167-76 (1981). Doc. 37 at 17-22, 26. The case, therefore, proceeded to discovery. *See, e.g.*, docs. 38 & 39.

During discovery, Defendants identified Mitchell Adam Blass, M.D., as a retained expert witness who will present expert testimony at trial. Doc. 55-2 at 1. Dr. Blass provided a written expert witness report, *id.* at 5-20, which explains that he is "an internal medicine and infectious disease doctor." *Id.* at 5. He opines that, "within a reasonable degree of medical probability, . . . Plaintiff did not contract COVID from his actions working onboard the vessel PHILADELPHIA EXPRESS on July 11-12, 2020." *Id.* at 5-6. He also opines that "Plaintiff could have contracted COVID from a myriad of other sources, including, without limitation, contact with his girlfriend whom he was living with, and who was working as a waitress at the time and had contracted COVID prior to Mr. Roberts." *Id.* at 6. He identifies the deposition transcripts of Plaintiff and Andres Lozano, Plaintiff's medical records, and documents produced in discovery as the materials he reviewed in forming his opinions. *Id.* The opinions are based on his review of those documents and his "education, training and experience in the field of infectious disease." *Id.*

Plaintiff moves to exclude Dr. Blass' opinions, first arguing his report does not meet the requirements of Federal Rule of Civil Procedure 26(a)(2), doc. 55 at 3-7, and alternatively arguing his opinions should be excluded under Federal Rule of Evidence 702, *id.* at 7-14.  The Court addresses each argument in turn.

### **Federal Rules of Civil Procedure 26 and 37**

Before turning to the substance of Dr. Blass's opinions, Plaintiff first challenges the completeness of Defendants' expert disclosures under Rule 26.  *See* doc. 55 at 3-7.  The Federal Rules of Civil Procedure require a party seeking to introduce expert testimony at trial to disclose the identity of the expert along with an expert report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications . . . ; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the

>compensation to be paid for the study and testimony in the case.

Fed. R. Civ. P. 26(a)(2)(A)-(B). These disclosures must be made "at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D).

Plaintiff argues Dr. Blass' report "failed to explain the bases and reasons for [his] opinions and failed to disclose the facts and data [he] considered . . . in forming them." Doc. 55 at 3. Specifically, Plaintiff objects to Blass' report for its failure to include a reference to "data of COVID-19's incubation time," *id.* at 4,[1] and a reference to information from the Center for Disease Control ("CDC") website, which Blass testified he relied on to formulate his opinions, *id.* (quoting doc. 55-4 at 9). Plaintiff argues his counsel was prevented from preparing for a "full and effective cross-examination of Blass during his deposition." *Id.* at 5. Therefore, he argues, some sanction is warranted under Rule 37. *See id.* at 6. Defendants respond that Dr. Blass' report "is more than adequate." Doc. 56 at 7. Defendants' lackluster argument in support of Dr. Blass'

---

[1] Blass testified during his deposition that he relied upon "medical sources as the outbreak has evolved over time and from being in direct patient care. Some of it is direct patient care knowledge. Other is reference from medical resources that are widely available to those of us that practice." Doc. 55-4 at 13.

report is not enough to overcome the convincing arguments raised by Plaintiff. The report does not completely identify the basis and reasons for Dr. Blass' opinions or the facts or data he considered in forming them. *See* Fed. R. Civ. P. 26(a)(2)(B). However, as Defendants do convincingly argue, sanctions under Rule 37 are not appropriate. *See* doc. 56 at 8-10.

"If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). " 'The party failing to comply with Rule 26(a) bears the burden of establishing that its non-disclosure was either substantially justified or harmless.'" *Caviness v. Holland*, 2011 WL 13160390, at *2 (S.D. Ga. Mar. 17, 2011) (quoting *Hewitt v. Liberty Mut. Grp., Inc.*, 268 F.R.D. 681, 683 (M.D. Fla. 2010)). "Substantial justification is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply." *Hewitt*, 268 F.R.D. at 682 (internal quotation marks and citations omitted). As to the issue of harm, "[a] failure to timely make the required disclosures is harmless when there is no prejudice to the

party entitled to the disclosure." *Hewitt*, 268 F.R.D. at 683 (citation omitted).

Even though Dr. Blass' report is deficient under Rule 26, Defendants have met their burden of demonstrating that the deficiency was harmless. As they point out, one factor the Court considers in analyzing whether a Rule 26 violation is substantially justified or harmless is "the surprise to the party against whom the evidence would be offered." *Abdulla v. Klosinski*, 898 F. Supp. 2d 1348, 1359 (S.D. Ga. 2012); *see also Rangel v. Anderson*, 202 F. Supp. 3d 1361, 1366 (S.D. Ga. 2016). They argue Plaintiff could not have been surprised by their expert's reliance on CDC guidance, since Defendants had referenced that same guidance in communications with Plaintiff prior to Blass' deposition. Doc. 56 at 8 (citing doc. 56-5). Additionally, a review of Blass' deposition transcript shows that Plaintiff's counsel thoroughly cross-examined him. *See generally* doc. 55-4. As in *Abdulla*, Plaintiff "ha[s] not cited any specific examples of information [he] wished to obtain or extract but [was] unable to, nor any questions [he was] unable to ask." *Abdulla*, 898 F. Supp. 2d at 1360. Defendants have, therefore, shown that, although the report is deficient, Plaintiff was not surprised by Blass'

reliance on the CDC guidance and COVID-19 incubation time, and, even if he were surprised, suffered no harm from it.

Moreover, although Plaintiff's counsel specifically asked Blass about his reliance on COVID-19 incubation times and CDC guidance, counsel did not object, or seek any other relief related to his reliance on that information. *See, e.g.*, doc. 55-4 at 9, 13, 16; *see also generally* docket. Instead, he waited to raise the issue now. In analyzing whether exclusion is appropriate under Rule 37(c), the Court also considers Plaintiff's ability to cure any surprise. *See Kraese v. Jialiang Qi*, 2021 WL 640826, at * 5 (S.D. Ga. Feb. 18, 2021) (citing *Kondragunta v. Ace Doran Hauling & Rigging Co.*, 2013 WL 1189493, at *6 (N.D. Ga. Mar. 21, 2013), *abrogated on other grounds by Cedant v. United States*, 75 F.4th 1314 (11th Cir. 2023)). Plaintiff had the ability to cure any limited surprise by requesting more specific disclosures, seeking a discovery extension, or otherwise attempting to resolve this dispute and did not.[2] That further weighs against any exclusionary measures under Rule 37. Because

---

[2] Notably, the District Judge's Rule 26 Instruction Order directs any party desiring to file "any discovery motions," including "motions for discovery sanctions," to take specific steps prior to filing such a motion. Doc. 2 at 5-6. There is no indication Plaintiff took any of these steps. *See generally* docket.

Defendants have shown that any deficiency in Blass' report was harmless under Rule 37, Plaintiff's request to exclude his testimony based on a Rule 26 violation is **DENIED**. Doc. 55, in part.

## Federal Rule of Evidence 702

Next, Plaintiff seeks exclusion of Dr. Blass' testimony and opinions under Federal Rule of Evidence 702. Doc. 55 at 7-14. Rule 702 compels the Court to act as a "gatekeeper" for expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n. 7, 597 (1993)). In performing this task, the Court must consider whether the party offering the evidence has shown:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Frazier*, 387 F.3d at 1260 (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). The proponent of the expert opinion bears the burden of establishing qualification, reliability, and helpfulness by a preponderance of the evidence. *Allison v. McGhan Med.*

9

*Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 592 n.10).

Under the first prong, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61; *see also* Fed. R. Evid. 702 (a witness may be qualified as an expert by "knowledge, skill, experience, training, or education[.]"). But, "[w]hen an expert witness relies mainly on experience to show he is qualified to testify, 'the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Payne v. C.R. Bard, Inc.*, 606 F. App'x 940, 942-43 (11th Cir. 2015.) (quoting *Frazier*, 387 F.3d at 1261).

As to the second prong, the reliability "criterion remains a discrete, independent, and important requirement for admissibility." *Frazier*, 387 F.3d at 1261. "The Supreme Court in *Daubert* set out a list of 'general observations' for determining whether expert testimony is sufficiently reliable to be admitted under Rule 702." *United States v. Brown*, 415 F.3d 1257, 1267 (11th Cir. 2005) (citation omitted). These factors, or

10

observations, inquire into the expert's "theory or technique" and are: "(1) whether it can be (and has been) tested; (2) whether it has been subjected to peer review and publication; (3) what its known or potential rate of error is, and whether standards controlling its operation exist; and (4) whether it is generally accepted in the field." *Id.* (citation omitted). "Sometimes the specific *Daubert* factors will aid in determining reliability; sometimes other questions may be more useful." *Frazier*, 387 F.3d at 1262. "Indeed, the Committee Note to the 2000 Amendments of Rule 702 expressly says that, '[i]f the witness is relying solely or primarily on experience, then the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *Id.* at 1261.

Lastly, expert testimony must assist the trier of fact. *Frazier*, 387 F.3d at 1262. "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." *Id.* (citation omitted). This inquiry is commonly called the "helpfulness" inquiry. *Prosper v. Martin*, 989 F.3d 1242, 1249 (11th Cir. 2021) (citing *Frazier*, 387 F.3d at 1260). "Expert testimony which does

not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id.* (quoting *Daubert*, 509 U.S. at 591).

Plaintiff attacks Blass on all three grounds. First, he argues Blass is not qualified to testify regarding the spread of COVID-19. Doc. 55 at 8-9. Blass opines that, within a reasonable degree of medical probability, "Plaintiff did not contract COVID from his actions working onboard the [V]essel . . . ." Doc. 55-3 at 1. Instead, it is his opinion that "Plaintiff could have contracted COVID from a myriad of other sources . . . ." *Id.* at 2. Plaintiff argues Blass is not qualified to offer these opinions, since Blass testified that contact tracing is "outside of the scope" of his practice. Doc. 55 at 9 (quoting doc. 55-4 at 14).

Blass is a licensed physician with over 20 years' experience. Doc. 56-3 at 5. He is board certified in both internal medicine and infectious disease. *Id.* He was employed as a Hospital Epidemiologist at Saint Joseph Hospital of Emory university for six years. *Id.* at 7. He began studying COVID in the first quarter of 2020. Doc. 56-4 at 6-7. He has "seen literally thousands of patients with COVID on a day-to-day basis for now two years or more." *Id.* at 27.

"Although the Eleventh Circuit has not held that physicians must have a specialty in the relevant field to qualify as an expert, the area of the witness's expertise must align with the subject matter of the witness's testimony." *Thompson v. United States*, 2019 WL 149553, at *4 (S.D. Ga. Jan. 9, 2019) (Baker, J.) (citing *United States v. Paul*, 175 F.3d 906, 912 (11th Cir. 1999)). As this Court has explained, "[a] medical degree . . . does not qualify a physician to testify concerning *any* medical issue; a physician's expert testimony must stay within the 'reasonable confines' of his or her practice area. *Id.* (citing *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 970 (10th Cir. 2001)). Dr. Blass' opinions are within the "reasonable confines" of his experience as an epidemiologist and infectious disease physician. *Id., see also, e.g.*, *Dome v. Celebrity Cruises Inc.*, 2022 WL 15471657, at * 4 (S.D. Fla. June 27, 2022) (finding physician qualified under Rule 702 and *Daubert* to opine on the likely cause of Plaintiff's COVID-19 infection). He is, therefore, qualified to offer them. His testimony about the difficulties of contact tracing "go[es] to the weight, not the admissibility, of his testimony." *Dome*, 2022 WL 15471657, at *4 (collecting cases).

Plaintiff next challenges Dr. Blass' methodology. Doc. 55 at 10. Plaintiff objects to Dr. Blass "resort[ing] back to his experience in taking care of patients for how he reached his conclusions," and critiques his opinions as "based only on a review of a small subset of material, which would not reliably allow him to form an expert opinion on the issue of where Plaintiff contracted COVID." *Id.* Plaintiff argues that Blass did not have "detailed knowledge of the ship's layout," and quotes Blass' testimony that he did not take any measurements. *Id.* at 10-11. He further argues that Blass did not review the medical records of the crew member who had COVID, and therefore "did not know what symptoms he had, or when he started expressing symptoms . . . ." *Id.* at 10. Blass also did not review the medical records of Plaintiff's girlfriend, so similarly "did not have any knowledge of her symptoms or when she contracted COVID. *Id.* at 12. Plaintiff also points out that Blass has no knowledge of his living arrangements with his girlfriend. *Id.* at 13.

Defendants bear the "substantial burden" of laying the proper foundation for the admission of Blass' testimony. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1107 (11th Cir. 2005). Blass relies on his experience to formulate his opinions. *See* doc.

14

55 at 10 ("[Blass] repeatedly and circularly resorts back to his experience in taking care of patients for how he reached his conclusions . . . ."); doc. 56-3 at 6 ("My opinions . . . are based upon my review of the documents provided to me, my education, training and experience in the field of infectious disease."). Therefore, Defendants must "explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (emphasis omitted). Defendants have sufficiently done so for at least one of Blass' opinions.

Defendants argue that Blass reviewed deposition transcripts that provided him with sufficient facts to formulate his opinions. Doc. 56 at 12-13. Because Dr. Blass' "opinion is simply that Plaintiff did not catch COVID-19 on the Vessel," and COVID acquisition is "dependent on exposure to an individual that actually has it," they argue his reliance on deposition testimony regarding the movements of the COVID-19 positive crew member and the negative COVID-19 testing of "every remaining crew member" at the next port of call is sufficient. *Id*. Blass' extensive experience as an infectious disease physician, applied to the facts of this

case,³ is sufficiently reliable for purposes of his opinion that "within a reasonable degree of medical probability, . . . Plaintiff did not contract COVID from his actions working onboard the [V]essel . . . ." Doc. 56-3 at 5-6.

Defendants have not, however, met their burden of laying a sufficient foundation for Blass' second opinion.  He opines that "Plaintiff could have contracted COVID from a myriad of other sources, including, without limitation, contact with his girlfriend whom he was living with, and who . . . had contracted COVID prior to Mr. Roberts." Doc. 56-3 at 6. Defendants argue Blass "merely bolstered" his first opinion "by pointing out an additional possible source of infection." Doc. 56 at 13-14.  Because Blass does not opine that Plaintiff definitively caught COVID-19 from his girlfriend, merely that Plaintiff did not catch COVID-19 on the Vessel,

---

³ Plaintiff argues Blass' opinion is based upon an erroneous understanding of the facts, doc. 65 at 4-5, but "[i]nconsistent testimony . . . goes to weight and credibility of [Blass]'s opinion, not to its admissibility." *Desert Falcon-Special Maritime Enterprise v. East Coast Terminal Co.*, 2004 WL 5612966, at *3 (S.D. Ga. Jan. 5, 2004).  The weight to be given to admissible expert testimony is a matter for the jury. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence. . . .  Quite the contrary, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" (quoting *Daubert*, 509 U.S. at 596)).

16

they contend Blass' failure to contract-trace Plaintiff's infection to his girlfriend "does not merit exclusion." *Id.* While Defendants' argument is logical, it is insufficient to carry their burden without an explanation of how Blass relied on his experience to identify other possible sources of Plaintiff's COVID-19 infection and why his experience is a sufficient basis for that conclusion. *Frazier* 387 F.3d at 1261 (emphasis omitted). Blass' second opinion is, therefore, **EXCLUDED** as unreliable.

As to Blass' remaining opinion, Plaintiff finally argues it will not be helpful to the jury. Doc. 55 at 13-14. Blass' testimony about the ways in which a person can, or, more importantly, cannot contract COVID-19 is "beyond the understanding of the average layperson." *Frazier*, 387 F.3d at 1262. It goes beyond "what lawyers for the parties can argue in closing arguments." *Id.* at 1262-63. It is also directly relevant to Defendants' defense of Plaintiff's remaining claim. Therefore, it is not subject to exclusion under the helpfulness requirement, either.

## Conclusion

For the foregoing reasons, Plaintiff's Motion to Exclude is **GRANTED, in part**, and **DENIED, in part**. Doc. 55. Dr. Blass' opinion that "Plaintiff could have contracted COVID from a myriad of other

17

sources, including, without limitation, contact with his girlfriend whom he was living with, and who was working as a waitress at the time and had contracted COVID prior to Mr. Roberts," doc. 56-3 at 6, is **EXCLUDED**. Dr. Blass' remaining opinion is not excluded.

    **SO ORDERED** this 18th day of October, 2023.

                                            */s/ Christopher L. Ray*
                                            CHRISTOPHER L. RAY
                                            UNITED STATES MAGISTRATE JUDGE
                                            SOUTHERN DISTRICT OF GEORGIA